**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

EMPIRE FIRE & MARINE
INSURANCE COMPANY,

     Plaintiff,

v.              ACTION NO. 2:17cv426

GLENDA PANDT-BROWN and
JACK GUEMPLE,

     Defendants.

## <u>UNITED STATES MAGISTRATE JUDGE'S</u>
## <u>REPORT AND RECOMMENDATION</u>

  This matter comes before the Court on a motion to dismiss filed by defendant Jack Guemple. ECF No. 11. This motion was referred to the undersigned by order dated January 11, 2018, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 19. For the reasons stated herein, the Court RECOMMENDS that the motion to dismiss be DENIED.

## I.  PROCEDURAL HISTORY

  On August 11, 2017, Empire Fire & Marine Insurance Company ("Empire") filed this action against Jack Guemple ("Guemple") and Glenda Pandt-Brown ("Pandt-Brown"). Compl., ECF No. 1. Empire seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, defining the rights and legal relations between the parties in connection with an underlying lawsuit in the Circuit Court for the City of Portsmouth. *Id.* at 2. On December 8, 2017, Guemple filed a motion to dismiss for failure to state a claim and for lack of jurisdiction with an accompanying memorandum. ECF Nos. 11–12. Empire filed an

opposition to the motion to dismiss on December 22, 2017, with an accompanying memorandum. ECF Nos. 14–15. On January 5, 2018, Guemple replied to Empire's opposition. ECF No. 18. On January 24, 2018, after determining that Guemple asserted a new argument in his reply, the Court ordered Empire to file a sur-reply. ECF No. 20. Empire did so on February 1, 2018. ECF No. 21.

## II.    FACTUAL HISTORY

Taking the facts in the complaint as true, on September 15, 2015, Pandt-Brown rented an automobile from Enterprise Rent-a-Car Co. ("Enterprise") in Jamaica, New York. Compl. ¶ 13. Pandt-Brown elected to purchase supplemental liability protection in connection with her rental, which was provided by Empire. *Id.* That same day, Pandt-Brown was involved in an automobile collision with Guemple, causing injuries. *Id.* at ¶ 21. It is uncontested that Pandt-Brown was under the influence of alcohol at the time of the collision.[1] *Id.* at ¶ 17; ECF No. 12 at 1–2.

Guemple filed suit against Pandt-Brown on June 20, 2016 in the Circuit Court for the City of Portsmouth, seeking punitive and compensatory damages. Compl. ¶ 23; ECF No. 1-1. According to Guemple's brief, Empire defended the action in circuit court. ECF No. 12 at 2. Guemple further states that sometime during that suit, Pandt-Brown left the country and has not since been located. *Id.* On August 11, 2017, while the underlying suit was still pending, Empire filed this action, nearly 14 months after the commencement of the state tort suit. ECF No. 1. Ultimately, the jury in the state tort suit returned a verdict in favor of Guemple for

---

[1] According to the complaint, her blood alcohol content was 0.26%. Compl. ¶ 22. Pandt-Brown was found guilty of driving under the influence, second offense, in Northampton General District Court in violation of Va. Code § 18.2-266. ECF No. 1-6.

$1,600,000.00.[2]  ECF No. 12 at 2.

The agreement between Pandt-Brown and Enterprise is comprised of an "Agreement Summary" sheet, and a "Rental Agreement Jacket." ECF Nos. 21-1, 21-2.[3]  The agreement summary states that "Enterprise purchases no third-party insurance covering this rental, but provides its renters and authorized drivers with minimum liability coverage, as required by" New York law. ECF No. 21-1.  The agreement summary also informs the renter that, if desired, he or she "may purchase Supplemental Liability Coverage from Enterprise at an additional cost." *Id.* Under a section titled "acknowledgement of the entire agreement," the agreement summary requests, in all capital letters, that the renter affirm that she "ha[s] read and agree[s] to the terms and conditions on this rental agreement summary and the rental agreement jacket, incorporated herein by reference (collectively, the 'agreement')." *Id.*  Pandt-Brown initialed above this section and signed below it. *Id.*

Section 3(b)(3) of the rental agreement jacket states that the renter shall pay "Owner, its affiliates or agents amounts as set forth on the Rental Agreement Summary for:  . . . The Optional Accessories, services and/or products charges for those items accepted by Renter." ECF No. 21-2 at 2.  Section 17 of the rental agreement jacket is titled "Optional Supplemental Liability Protection," and directs the renter to the supplemental liability policy if the renter elected to purchase that policy. *Id.* at 4–5.  The policy is attached at the end of the agreement, and specifies Empire as the insurance carrier. *Id.* at 6–8.

The policy "provides excess auto liability insurance" for losses involving "bodily injury"

---

[2] The opposing memoranda reflect slightly different dates for the state jury verdict, with Guemple asserting a date of October 31, 2017, ECF No. 12 at 2, and Empire asserting a date of November 9, 2017, ECF No. 15 at 3.

[3] Empire attached the contract, as signed by Pandt-Brown, to its sur-reply. ECF Nos. 21-1, 21-2. Empire also attached to the complaint the full language of its supplemental insurance policy, with state variants, including the New York variant. ECF No. 1-2.

and "property damage" caused by accidents involving the rental vehicle. *Id.* at 6. Section V of the policy, titled "[e]xclusions," states:

> This insurance does not apply to:
>
> . . . .
>
> > L. Punitive or exemplary damages.
> >
> > M. "Loss" arising out of an "accident" which occurs while the operator of the "Rental Vehicle" is under the influence of alcohol or drugs, or other substances unless used as prescribed by a physician.

*Id.* at 6–7.

On November 19, 2015, Empire sent a reservation of rights letter to Pandt-Brown informing her that she may not be entitled to supplemental liability coverage due to the possibility that she was under the influence of alcohol at the time of the accident. ECF No. 1-3. The letter cites section V.M. of the policy. *Id.* On March 7, 2016, Empire sent Pandt-Brown another letter, informing her that it was denying and disclaiming any coverage for the accident, because Pandt-Brown was determined to have been operating the rental vehicle under the influence of alcohol. ECF No. 1-4. That letter also cites section V.M. *Id.* On November 17, 2016, Empire sent Pandt-Brown a letter informing her that it had received notice of a summons and complaint in the underlying tort case, and that it was still disclaiming any coverage due to section V.M. ECF No. 1-5. These letters are all attached to the complaint.

### III.    STANDARD OF REVIEW

#### A. Rule 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss complaints, or claims within complaints, upon which no relief can be granted. Fed. R. Civ. P. 12(b)(6); *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 354 (E.D. Va. 2015). In order to survive a

4

motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard requires that the complaint state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In essence, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ascertaining whether a complaint states a plausible claim for relief is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss pursuant to Rule 12(b)(6) challenges "the sufficiency of a complaint; it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense." *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d 733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Therefore, "[i]n ruling on a 12(b)(6) motion, a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The factual allegations, however, "cannot be mere speculation, and must amount to more than 'a sheer possibility that a defendant has acted unlawfully.'" *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 747 (E.D. Va. 2016) (quoting *Iqbal*, 556 U.S. at 678). In addition, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

A district court must "consider documents incorporated into the complaint and documents attached to a motion to dismiss that are integral to and relied on in the complaint," which it can do without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Lewis v. Newton*, 616 F. App'x 106, 106 (4th Cir. 2015) (quoting *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008); *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015)).

## B. Declaratory Judgment Standard

The Declaratory Judgment Act gives federal courts the power to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A declaratory judgment has the force and effect of a final judgment. *Id.* Section 2201 does not in itself confer jurisdiction. There are three requirements that must be met before a court can properly exercise jurisdiction in a declaratory judgment action:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting *N. Jefferson Square Assocs., L.P. v. Va. Housing Dev. Auth.*, 94 F. Supp. 2d 709, 716 (E.D. Va. 2000) (other internal citations omitted)). The third prong is the primary distinction between section 2201 cases and other cases before a federal court. Even where a court has jurisdiction over a declaratory judgment action, it may nonetheless decline to exercise that jurisdiction at its discretion. *Cont. Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994). Such discretion is not completely unfettered; the court may only decline to exercise jurisdiction for "good reason." *Id.*

6

(quoting *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

In situations where a declaratory judgment action is brought in a matter related to a pending state court action, the court looks to "'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)). Further, any dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and [must] 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

## IV.    ANALYSIS

Guemple argues that Empire's suit should be dismissed for the following reasons: (1) Empire is not a real party in interest; (2) Empire filed for a declaratory judgment too late to effectuate the purpose of the Declaratory Judgment Act; (3) a declaratory judgment will not be useful in this case; (4) prudential considerations of federalism, efficiency, and comity counsel against the Court exercising its discretionary jurisdiction; and (5) Empire fails to state a claim upon which relief can be granted. ECF Nos. 12, 18.

### A. Empire is a real party in interest.

The Court will first consider Guemple's argument, advanced in his reply brief, that Empire is not a real party in interest. ECF No. 18 at 2–4. Guemple bases this argument on language from the agreement summary, which states that "Enterprise purchases no third-party insurance covering this rental, but provides its renters and authorized drivers with minimum

7

liability coverage. . . . If additional liability coverage is desired you may purchase Supplemental Liability Coverage from Enterprise at an additional cost." ECF No. 18-1. According to Guemple, this language, and the lack of reference to Empire, establish that Enterprise, not Empire, is the real party in interest.

Federal Rule of Civil Procedure 17 provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The object of Rule 17 is that an "action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation." *Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973). Rule 17 was originally enacted to expand, not constrict, the universe of persons able to bring suit, and the Fourth Circuit has expressed a distaste for using Rule 17 to preclude suits. *Id.* ("Intended to expand the class of those who may sue to include persons having an equitable or beneficial interest, the rule is unfortunately susceptible to efforts to prevent prosecution of claims . . . 'Rule 17(a) is a barnacle on the federal practice ship [which] ought to be scraped away.'") (quoting Kennedy, *Federal Rule 17(a); Will the Real Party in Interest Please Stand?*, 51 Minn. L. Rev. 675, 724 (1967)).

First, as a factual matter, Guemple is incorrect that the agreement fails to advise Pandt-Brown of Empire's interest. ECF No. 18 at 2 (stating that "[a]t no place in the Agreement is Empire Fire & Marine Insurance Company mentioned"). The document Guemple asserts is the agreement between Pandt-Brown and Enterprise states at the top that it is the "Rental Agreement Summary." ECF No. 18-1. Approximately half-way down the page, shortly above Pandt-Brown's signature, the agreement summary states, in all capital letters: "[Pandt-Brown] ha[s] read and agree[s] to the terms and conditions on this rental agreement summary and the rental agreement jacket, incorporated herein by reference (collectively, the 'agreement')." *Id.* Thus,

determination of what Pandt-Brown agreed to cannot be determined solely by reference to the agreement summary that Guemple attached to his reply, but must also reference the rental agreement jacket Empire attached to its sur-reply. ECF No. 21-2. That agreement states that the "Renter shall pay Owner, its affiliates or agents amounts as set forth on the Rental Agreement Summary for: [t]he Optional Accessories, services and/or products charges for those items accepted by Renter." *Id.* at 2 (section (3)(b)(3)). This language makes it clear that Enterprise may use affiliates or agents to provide optional services, such as the supplemental liability coverage mentioned in the agreement summary. The agreement later states that Enterprise uses just such an agent for its supplemental rental liability insurance, and explicitly names Empire as that agent. *Id.* at 6. The agreement then details the supplemental liability policy and lists the exclusions, including the exclusions for punitive damages and for damage caused while the insured was operating the vehicle while under the influence of alcohol. *Id.* at 6–8. Accordingly, the claim that Empire is not a real party in interest because Pandt-Brown contracted solely with Enterprise must fail.

The United States District Court for the Western District of Pennsylvania addressed a similar issue in *Ressler v. Enterprise Rent-A-Car Co.*, No. 06-562, 2007 WL 2071655 (W.D. Pa. July 13, 2007). The court held that Enterprise was not liable for breach of contract in connection with any supplemental insurance benefits, because:

> Enterprise is not the insurer in this case. The only contract involving Enterprise is the rental agreement. Although [the renter] elected to purchase the optional personal accident insurance in connection with his automobile rental, the rental agreement clearly states that he was purchasing insurance issued by Empire Fire and Marine and that the coverage was subject to the terms and conditions of the Empire Fire and Marine insurance policy.

*Id.* at \*3 (internal citations omitted). Other courts have entertained declaratory judgment actions brought by Empire in connection with supplemental insurance purchased by insureds when

renting a car from Enterprise. *See, e.g., Empire Fire & Marine Ins. Co. v. Floyd*, 631 F. App'x 686, 689 (11th Cir. 2015) (holding that a policy excluding injuries caused by a fellow employee during the course of employment was not applicable); *Empire Fire & Marine Ins. Co. v. Sargent*, 211 F. App'x 506, 507–08 (7th Cir. 2007) (holding that the policy's exclusion for driving while intoxicated was enforceable); *Empire Fire & Marine Ins. Co. v. Washington*, No. C16-1596 RSM, 2017 WL 6406020, at *4–6 (W.D. Wash. Dec. 15, 2017) (adjudicating dispute as to who was a covered party under the supplemental policy).

The agreement between Enterprise and Pandt-Brown specifies that the supplemental insurance was offered by Empire, and Empire, not Enterprise, contracted to indemnify the insured in accordance with the terms of the supplemental liability agreement. Thus, Empire is a real party in interest.

**B. Empire filed this action in a timely fashion.**

Guemple argues that Empire did not timely file this declaratory action "so as to effectuate the purpose of declaratory judgments." ECF No. 12 at 5–6. Specifically, Guemple argues that, because the underlying tort case has concluded, this suit does not serve the purpose of guiding the parties' future conduct. *Id.*

Guemple relies largely on *Liberty Mut. Ins. Co. v. Bishop*, 177 S.E.2d 519, 522 (1970). ECF No. 12 at 5–6. In *Liberty Mutual*, a driver was involved in an accident while driving a vehicle home from the dealer, before final settlement was made between the purchaser and the dealer, and there was uncertainty as to whether the dealer's insurance policy or the driver's insurance policy covered the accident. *Liberty Mutual*, 177 S.E.2d at 520. The driver's personal insurance company defended the case, settled, and paid the claim before seeking a money judgment from the dealer's insurance company. *Id.* at 521. The Virginia Supreme Court held

10

that a declaratory judgment action was inappropriate, because "the various claims and rights asserted had all accrued and matured, and that the wrongs had been suffered, when [the] petition for a declaratory judgment was filed." *Id.* at 524.

*Liberty Mutual* fails to support dismissal of this action. First, and primarily, state court judgments do not guide this Court's actions in deciding whether to grant declaratory relief. *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990) ("Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction."). Second, the court in *Liberty Mutual* held that what the insurer was really seeking in bringing the declaratory judgment action was money damages against the other insurer. *Liberty Mutual*, 177 S.E.2d at 524. The same cannot be said in this case, as Empire is not seeking money damages from Guemple or Pandt-Brown. Moreover, Empire filed this action during the pendency of the underlying suit, not after it suffered the harm of paying the claim.

Guemple further argues that the purpose of declaratory judgments are to "'guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights.'" ECF No. 12 at 5 (quoting *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 511 (E.D. Va. 2014)). Guemple argues that, because the underlying lawsuit has already concluded, this suit will not guide the parties' future conduct or prevent future litigation. *Id.* at 6. To the contrary, it would guide Empire's future conduct in clarifying whether Empire must pay the money judgment to Guemple or not. Further, it may prevent future litigation that Guemple asserts he will imminently file in New York state court, which will be discussed in more detail later.

Finally, the Fourth Circuit's statement in *Nautilus* that courts have "frequently approved

11

the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, *even in advance* of a judgment against the insured on the underlying claim" suggests that seeking a declaratory judgment after judgment in the underlying case is not only one permitted route, but is, in fact, the normal course of business. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375–76 (4th Cir. 1994) (emphasis added). Guemple provides no persuasive authority to the contrary.

## C. This action will serve a useful purpose.

Guemple argues that this declaratory judgment action will not serve a useful purpose. ECF No. 12 at 6–7. "[C]ourts have repeatedly recognized that '[a] declaratory judgment serves no "useful purpose" when it seeks only to adjudicate an already-existing breach of contract claim.'" *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12cv49, 2014 WL 652253, at *2 (Feb. 19, 2014) (quoting *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 WL 3065929, at *13 (S.D.N.Y. July 25, 2012)). In this case, Guemple asserts that "a New York state breach-of-contract claim is imminent and will be filed shortly in New York state court." ECF No. 12 at 7. Thus, citing *Metra* and *Seneca*, Guemple argues that a declaratory judgment serves no useful purpose. *Id.*

What Guemple fails to acknowledge, however, is that in *Seneca*, this Court distinguished between situations where the breach of contract claim and the declaratory judgment claim were brought by the same party, and situations where the two claims were brought by different parties. *Seneca*, 30 F. Supp. 3d at 513. Specifically, this Court held that when the declaratory judgment and breach of contract claims were brought by opposing parties, the declaratory judgment action serves a useful purpose, because the party bringing a breach of contract claim could simply dismiss its claim and leave the opposing party without an avenue for relief. *Id. See also Great*

12

*Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14cv295, 2014 WL 6673902, at *6 (E.D. Va. Nov. 24, 2014) (exercising jurisdiction over a declaratory judgment action where the party opposing the declaratory judgment filed a breach of contract claim).

Further, courts that have dismissed declaratory judgment actions as duplicative of breach of contract claims have typically done so after comparing the declaratory judgment action and the breach of contract claim. *See, e.g., Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 863 (E.D. Va. 2016); *Jackson v. Ocwen Loan Servicing, LLC*, No. 3:15cv238, 2016 WL 1337263, at *13 (E.D. Va. Mar. 31, 2016). It is impossible for the Court to do so in this instance, because, to the Court's knowledge, no breach of contract claim has yet been filed.

The Fourth Circuit has identified two principal criteria in determining when a declaratory judgment will be useful: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). The instant case will serve these useful purposes. It will clarify the applicability of the exclusions in the supplemental liability policy, and will provide certainty and guidance to the parties in moving forward in this dispute. *See Vt. Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1186 (E.D. Va. 1995) ("Undoubtedly, the declaratory relief Plaintiff seeks would be useful in determining the parties' legal relationship and would terminate the issue of whether Vermont Mutual must defend and indemnify the Everettes in the state tort action.").

**D. Consideration of the *Nautilus* factors does not warrant dismissal in this case.**

Next, Guemple argues that the principles of federalism, efficiency, and comity support dismissing the declaratory judgment action. ECF No. 12 at 8–9. The Fourth Circuit in *Nautilus* articulated four factors useful to district courts in deciding whether to exercise jurisdiction:

> (1) How strong is the state's interest in having the issues raised in the federal declaratory action decided in the state courts? (2) Can the issues raised in the federal action be more efficiently resolved in state court? (3) Are there overlapping issues of fact or law which would cause entanglement between the federal and state court systems? (4) Is this suit being used for procedural fencing – i.e., to achieve a federal hearing in a case not otherwise removable?

*Monticello Ins. Co. v. Baecher*, 857 F. Supp. 1145, 1148 (E.D. Va. 1994) (citing *Nautilus*, 15 F.3d at 376).[4]

The state has a sufficiently strong interest in having a decision decided in its courts when the question of state law is "difficult" or "unsettled." *Nautilus*, 15 F.3d at 378. Guemple asserts that the questions of New York state law here would be complex and that the issues presented in this case have not been resolved, rendering them "unsettled." ECF No. 12 at 8. The Court disagrees. Determination of this case does not present issues that are especially difficult or problematic. That the issues before us are governed by state law alone provides no reason for declining jurisdiction. *Nautilus*, 15 F.3d at 378 (holding that the fact that the insurance issues in the case were governed by Maryland substantive law did not justify declining jurisdiction). Therefore, that New York law would apply,[5] is no basis in itself to decline jurisdiction.

Abstention on the basis of state interest is not appropriate when the federal action

---

[4] While the portion of *Nautilus* involving appellate standards of review was overruled by the Supreme Court in *Wilton*, 515 U.S. 277, the *Nautilus* factors remain applicable. *Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 355 F. App'x 698, 699 n.1 (4th Cir. 2009).

[5] Under Virginia rules governing the conflict of laws, "the nature, validity and interpretation of a contract is [governed by] the law of the place where the contract is made." *Western Branch Holding Co. v. Trans Mktg. Houston, Inc.*, 722 F. Supp. 1339, 1341 (E.D. Va. 1989) (citing *Chesapeake Supply and Equip. Co. v. J.I. Case Co.*, 700 F. Supp. 1415, 1416 (E.D. Va. 1988)).

involves "the routine application of settled principles of law to particular disputed facts." *Id.* Declaratory judgment suits to interpret insurance contract provisions in federal court are common, even with contracts governed by state law. *See Hall v. Travelers Cas. Ins. Co. of Am.,* No. 1:16cv173, 2016 WL 9223923, at *3 (E.D. Va. Apr. 15, 2016). The provisions in this insurance contract are relatively straightforward, and their interpretation and application to this case do not appear to be vexatious. *See Penn-Am. Ins. Co. v. Coffey,* 368 F.3d 409, 413 (4th Cir. 2004) (stating that Virginia did not have a "particularly significant" interest where "any state law issues are standard and unlikely to break new ground"). Guemple suggests briefly at the end of his reply that this case is complicated because there are multiple parties (Enterprise, Empire, and Pandt-Brown). The Court does not view that factual matter as of a particular complexity and, in any case, it would not render the legal principles to be applied in this case beyond the Court's ken.

The second *Nautilus* factor is efficiency. When analyzing efficiency, a "court must look to 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.'" *Allstate Ins. Co. v. Lawson,* No. 2:13cv33, 2013 WL 5274503, at *2 (W.D. Va. Sept. 18, 2013) (quoting *Nautilus,* 15 F.3d at 379). Further, a court should analyze whether the issues in the federal proceeding can be better settled in "the proceedings that are already pending in state court." *Monticello,* 857 F. Supp. at 1149 (citing *Nautilus,* 15 F.3d at 378).

Guemple argues that he will file a New York state court action "imminently," which will raise all of the issues raised in this proceeding. ECF No. 12 at 9. Guemple provides no further information other than his bare assertion that the issues will be the same. The Court has no real

15

way to assess whether all claims can be satisfactorily adjudicated in that proceeding or whether all necessary parties are amenable to process in that proceeding. Once again, Guemple provides no reason why New York state court would be a more efficient forum other than that New York state law would be applied.

It seems hardly to serve the interest of efficiency to dismiss the case presently before the Court based merely on the assertion that some future action will be filed in New York that may address the same issues. No such action has been filed. It would be more efficient for the parties to litigate the issue in this Court, where an action has already been filed, then for the Court to dismiss this action, forcing the parties to start the process fresh elsewhere. *See Trigo v. Travelers Commercial Ins. Co.*, No. 3:10cv28, 2010 WL 3521759, at *10 (W.D. Va. Sept. 7, 2010) ("Of course, in this case there currently is no parallel state court litigation, and it is unclear on that basis how this Court could decide that state court proceedings could more efficiently handle this dispute than federal court."); *Everette*, 875 F. Supp. at 1186 ("'[I]t cannot be credibly argued that some yet-to-be instituted action in the state courts offers a "more effective or efficient" means of resolving the coverage issues presented here.'") (quoting *Nautilus*, 15 F.3d at 379).

Third, a court should decline jurisdiction if it would lead to unnecessary entanglement between the state and federal court systems due to overlapping issues of fact or law. Guemple argues that the imminent New York state court action will focus on the same issues of fact or law. ECF No. 12 at 9. This argument suffers the same defect as the previous one. There is no presently pending New York action. There is also no overlap between this action and the concluded Virginia state court action. The underlying tort case determined only whether Pandt-Brown committed a tort against Guemple, and the damages for which Pandt-Brown would be

16

liable. That case in no way dealt with the issue of whether Empire is required to indemnify Pandt-Brown by paying the judgment to Guemple. *See White*, 913 F.2d at 168 (declaratory judgment action concerning insurance coverage was not duplicative of underlying tort action); *Everette*, 875 F. Supp. at 1186 (same).

Finally, the Court must consider the issue of procedural fencing. The primary concern here is with forum shopping, that is, the concern that the plaintiff raced to federal court in order to achieve resolution in a favorable forum. Guemple does not allege that Empire engaged in improper procedural fencing. Empire filed this action while the underlying tort trial was underway, hoping to clarify its obligations in defending the case or its obligations if there was an unfavorable jury verdict. That Empire did not exercise great promptness in filing suit in this Court is not enough for the Court to conclude that Empire acted so improperly as to warrant dismissal of this action. There is also no argument that this Court would present a more favorable forum to Empire's claims than would a New York state court.

Ultimately, without a presently pending state court action, the only factor supporting the dismissal of this action is that this Court would be applying New York state law. As has been recognized many times, however, that in itself cannot justify dismissal of a declaratory judgment action. The Court should exercise jurisdiction.

**E. Empire has successfully stated a claim for declaratory relief.**

Finally, Guemple summarily argues that Empire fails to state a claim, because its complaint "fails to establish that there is an actual controversy between the parties that is ripe to be litigated at this time," and "fails to allege and establish that an exclusion to the policy applies to Ms. Pandt-Brown." ECF No. 12 at 9. Guemple provides no further elaboration on this argument.

In *Md. Cas. Co. v. Pacific Coal & Oil Co.*, an insurance company sought declaratory relief under section 2201 that it was not required to pay a third party for a tort claim caused by the insured. 312 U.S. 270, 271 (1941). The Supreme Court held that there was an actual controversy between the insurance provider and the third party to satisfy jurisdiction under section 2201. *Id.* at 274. Similarly, there is an actual controversy in this case. The matter is also ripe for adjudication. There is an outstanding judgment against Pandt-Brown, and Empire seeks a judgment as to whether it must pay that outstanding judgment.

As for Guemple's claim that Empire fails to allege that the exclusion applies to Pandt-Brown, the complaint is clear in its allegations that the exclusion applies. *See, e.g.*, Compl., ¶¶ 18, 30.

## V.    RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that the motion to dismiss, ECF No. 11, be DENIED.

## VI.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
February 26, 2018

19